UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

PERRY A. WILCOX,

       Plaintiff,

    v.

CUMBERLAND CO. BOARD OF
COMMISSIONERS, et al.,

       Defendants.

No. 22-cv-4672 (NLH) (AMD)

OPINION

APPEARANCE:

Perry A. Wilcox
357392/SBI 983669B
Hudson County Jail
30-35 Hackensack Ave.
Kearny, NJ 07032

    *Plaintiff Pro se*

HILLMAN, District Judge

    Plaintiff Perry A. Wilcox, a prisoner presently confined in the Hudson County Jail, New Jersey, submits this complaint under 42 U.S.C. § 1983. ECF No. 1. At this time, the Court must review the complaint pursuant to 28 U.S.C. § 1915 to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune

from such relief.  For the reasons set forth below, the Court

will permit the complaint to proceed in part.[1]

I.    BACKGROUND

Plaintiff is one of many pretrial detainees who have filed

suit against various Cumberland County officials for the

Cumberland County Jail's ("CCJ" or "Jail") response, or lack

thereof, to the COVID-19 pandemic.  On January 19, 2022, the

Court permitted Plaintiff and another inmate to file an amended

complaint against Cumberland County, former Warden Richard

Smith, former Warden Charles Warren, and Vandal Lee for

unconstitutional conditions of confinement and denial of medical

care, as well as related negligence claims, relating to COVID-

19.  See Wilcox v. Cumberland County Freeholders, et al., No.

21-0039 (ECF No. 18).  Plaintiff is represented by counsel in

that matter.  See Order Appointing Counsel, Wilcox, No. 21-0039

(July 14, 2022) (ECF No. 47).

Plaintiff filed this complaint on July 21, 2022.  ECF No.

1.  Plaintiff's claims fall into five general categories:

---

[1] The Court's preliminary review under 28 U.S.C. § 1915 does not
determine whether the allegations in the complaint would survive
a properly supported motion to dismiss filed by a defendant
after service.  See Richardson v. Cascade Skating Rink, No. 19-
08935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his
Court recognizes [a] § 1915(e) screening determination is a
preliminary and interlocutory holding, subject to revision at
any time prior to entry of final judgment." (internal quotation
marks omitted)).

challenges to the conditions and medical care at CCJ related to
COVID-19; challenges to the conditions and medical care at CCJ
related to alleged black mold; the agreement between Cumberland
County and Hudson County to house Cumberland County pre-trial
detainees in HCJ; challenges to the conditions and medical care
at HCJ related to COVID-19; and retaliation from HCJ officials.

II.  STANDARD OF REVIEW

    To survive a sua sponte screening for failure to state a
claim, a complaint must allege "sufficient factual matter" to
show that the Plaintiff's claims are facially plausible.  Fowler
v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim
has facial plausibility when the plaintiff pleads factual
content that allows the court to draw the reasonable inference
that the defendant is liable for the misconduct alleged.'"  Fair
Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 308 n.3 (3d Cir.
2014) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).
"[A] pleading that offers 'labels or conclusions' or 'a
formulaic recitation of the elements of a cause of action will
not do.'"  Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007)).

    In determining the sufficiency of a pro se complaint, the
Court must be mindful to construe it liberally in favor of the
plaintiff.  Haines v. Kerner, 404 U.S. 519, 520–21 (1972);
United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court

must "accept as true all of the allegations in the complaint and
all reasonable inferences that can be drawn therefrom, and view
them in the light most favorable to the plaintiff." Morse v.
Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).

III. DISCUSSION

A.   Cumberland County COVID-19 Claims

To the extent the complaint raises concerns about
Cumberland County's COVID-19 response, those claims are
duplicative of Plaintiff's prior action, Civil No. 21-0039.  In
that action, the Court rejected Plaintiff's attempt to submit
piecemeal supplements to the amended complaint in the absence of
a formal motion under Rule 15.  Wilcox, No. 21-0039 (Feb. 9,
2022) (ECF No. 24).  Plaintiff may not circumvent the rules
regarding amending complaints by filing a new action raising the
same claims.  See Walton v. Eaton Corp., 563 F.2d 66, 71 (3d
Cir. 1977).  The Court will dismiss Plaintiff's claims regarding
Cumberland County's COVID-19 response as duplicative of Civil
No. 21-0039.  Fabics v. City of New Brunswick, 629 F. App'x 196,
198 (3d Cir. 2015) ("'As part of its general power to administer
its docket,' a district court may dismiss a duplicative
complaint." (quoting Colorado River Water Conservation Dist. v.
United States, 424 U.S. 800, 817 (1976))).

4

B.  <u>Cumberland County Black Mold Claims</u>

Plaintiff alleges that he was exposed to black mold in the
CCJ and that he was denied medical care for exposure.  Plaintiff
alleges he was rehoused in CCJ's C-Pod in March 2022 along with
a few other detainees.  ECF No. 1-2 at 38.  "[P]laintiff
discovered the facility had a significant BLACK MOLD issue that
was beyond control.  The issue was so out of control that an
outside company had to be called in to clean or do their best to
remove the mold."  <u>Id.</u> (emphasis in original).  Plaintiff and
the others were moved out of C-Pod on or about April 5, 2022 and
returned on or about April 21, 2022.  <u>Id.</u> at 39, 41.  Plaintiff
alleges they were housed in G-Dorm in bad conditions when "[i]t
would've made the most sense to house plaintiff and others in B-
Dorm right next [to] A Dorm which was already occupied on the 1st
floor."  <u>Id.</u> at 39.

Plaintiff asked Defendant CFG Health Systems' ("CFG")
employees to check him out for "health complication due to the
exposure to BLACK MOLD."  <u>Id.</u> at 40 (emphasis in original).  The
nurse stated "that they would have to know the level of toxin
within the mold exposed to.  The plaintiff is more than sure
that is information in the exclusive control of the 'Interim'
Warden Eugene Caldwell."  <u>Id.</u>

"In accordance with the Supreme Court's decision in <u>Bell v.
Wolfish</u>, 441 U.S. 520, 549 (1979), detainees may not be punished

before they are adjudicated guilty." <u>Hope v. Warden York County</u> <u>Prison</u>, 972 F.3d 310, 325 (3d Cir. 2020).  "The touchstone for the constitutionality of detention is whether conditions of confinement are meant to punish or are 'but an incident of some other legitimate governmental purpose.'" <u>Id.</u> at 326 (quoting <u>Hubbard v. Taylor</u>, 538 F.3d 229, 231 (3d Cir. 2008) ("<u>Hubbard</u> <u>II</u>")).  "'[T]he ultimate question' is whether conditions are 'reasonably related to a legitimate governmental objective.'" <u>Id.</u> (quoting <u>Hubbard II</u>, 538 F.3d at 236) (alteration in original).  If detainees "are subject to conditions unrelated to a legitimate governmental objective, 'we may infer "that the purpose of the governmental action is punishment that may not be constitutionally inflicted upon detainees qua detainees."'" <u>Id.</u> (quoting <u>E. D. v. Sharkey</u>, 928 F.3d 299, 307 (3d Cir. 2019); <u>Hubbard II</u>, 538 F.3d at 232).  Courts must "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time, and whether conditions are (1) rationally related to their legitimate purpose or (2) excessive in relation to that purpose." <u>Id.</u> (citing <u>Hubbard v. Taylor</u>, 399 F.3d 150, 159-60 (3d Cir. 2005) ("<u>Hubbard I</u>")).

    Plaintiff has not sufficiently alleged punitive conditions in violation of the Fourteenth Amendment.  According to the complaint, detainees reported issues of black mold within C-Pod.

Prison officials then hired an outside company to treat the area
and moved detainees out of the affected area while the treatment
was taking place.  The detainees were returned to C-Pod after
the treatment concluded.  Even if the conditions could be
considered so severe that they would amount to punishment,
Plaintiff has not plausibly alleged that Defendant County
Commissioners and Caldwell were deliberately indifferent to the
conditions.  See Edwards v. Northampton County, 663 F. App'x
132, 135-36 (3d Cir. 2016).

Plaintiff also has not stated a claim for denial of medical
care under the Fourteenth Amendment.  Claims by pretrial
detainees for failing to provide adequate medical care arise
under the Fourteenth Amendment Due Process Clause and are
analyzed "under the standard used to evaluate similar claims
brought under the Eighth Amendment[.]"  Natale v. Camden Cty.
Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003).  The Court
will therefore review Plaintiff's claims under the same standard
used to evaluate similar claims brought under the Eighth
Amendment.  Moore v. Luffey, 767 F. App'x 335, 340 (3d Cir.
2019).[2]

_____

[2] The Supreme Court has applied an "objectively unreasonable"
standard to analyze an excessive force claim under the Fourteenth
Amendment.  Kingsley v. Hendrickson, 576 U.S. 389, 398 (2015).
However, the Third Circuit has declined to address whether the
"objectively unreasonable" standard applies to a deliberate

"[E]ntities like CFG, which provide healthcare services for to the County pursuant to a contract, 'cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability.'  Thus, to state a claim for relief, Plaintiff must provide facts showing that CFG had a relevant policy or custom, and that the policy or custom caused the constitutional violation he alleges." Abner v. Ellis, No. 21-15359, 2022 WL 17177838, at *7 (D.N.J. Nov. 23, 2022) (quoting Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003)).  See also Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 691 (1978). Plaintiff does not make any allegations that such a policy or custom regarding treatment for alleged black mold exposure exists.

Additionally, Plaintiff provides no facts that would support a reasonable inference that Defendant Caldwell was deliberately indifferent to a serious medical need.  The Court will dismiss these claims without prejudice.

C.    Contract Between Cumberland County and Hudson County

Plaintiff challenges the contract between Cumberland County and Hudson County that provides for the housing of Cumberland County detainees within the HCJ.  "[B]oth Cumberland and Hudson

---

indifference to medical need analysis.  Moore, 767 F. App'x at 340 n.2.

counties officials displayed a total disregard [f]or pre-trial detainees constitutional rights with the transfer more than two (2) hours away denying access to the court, effective assistance of counsel and place into conditions that are a complete replication of the 2020 CCDOC mishandling of the disease (COVID-19)." ECF No. 1-2 at 56.  "The Cumberland Officials never took into consideration the travel conditions a pretrial detainee has to endure to make a court appearance.  They never took the initiative to conduct a proper inspection of prevention, detection, or containment protocol of HCDOC handling of COVID-19 prior to the transfer of Cumberland detainees to Hudson."  Id.

The policy of transferring detainees from the Cumberland County Jail to Hudson County was extensively litigated in the New Jersey state courts.  The New Jersey Public Defender's Office "filed a lawsuit in the Superior Court of New Jersey seeking to enjoin Cumberland County from closing the jail, and they obtained a preliminary injunction prohibiting CCJ from transferring any inmate."  ECF No. 1-2 at 32 (citing Krakora, et al, v. County of Cumberland, et al., Case No. CAM-L-3500-20 (filed Oct. 22, 2020))).  The New Jersey Supreme Court declined to hear the matter and lifted the injunction.  Id. at 33; Krakora for State v. Cty. of Cumberland, 259 A.3d 288, reconsideration denied sub nom. Krakora v. Cty. of Cumberland, 262 A.3d 424 (N.J. 2021).

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior.  A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom."  Thomas v. Cumberland Cnty., 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). Plaintiff has not provided facts that would support a reasonable inference that the transfer policy amounts to deliberate indifference to Plaintiff's constitutional rights.  The Court will dismiss Plaintiff's challenge to the transfer contract.

Plaintiff also has not pled a retaliation claim against Defendant Braggs, who allegedly ordered Plaintiff's transfer to HCJ.  "To state a claim for retaliation, a prisoner must allege that: (1) he was engaged in constitutionally protected conduct, (2) 'he suffered some "adverse action" at the hands of prison officials,' and (3) 'his constitutionally protected conduct was "a substantial or motivating factor" in the decision' to take that action."  Wisniewski v. Fisher, 857 F.3d 152, 156 (3d Cir. 2017) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001)).

Plaintiff was transferred to HCJ on May 13, 2022 along with 14 other detainees.  ECF No. 1-2 at 43.  Plaintiff speculates his transfer was due to his pending civil rights complaint

10

against Cumberland County but offers no factual support for this claim other than his assertion that "special forces" were used to escort the 15 detainees out of their cells.  Id. at 43-44. However, he admits Defendant Caldwell "has been pushing prisoners out of the CCDOC Facility since December of 2021," i.e., since the New Jersey Supreme Court lifted the injunction on transfers.  Id. at 41.  "The dormitory section was completely emptied out January into February 2022.  The entire Blocks section was finished up prior to plaintiff and others similarly situated move back to C-Pod from G-Dorm."  Id.  He further noted that the "special forces" participated in all the transfers. Id.  Plaintiff has not plausibly alleged that his protected activities in this Court was a substantial or motivating factor in the transfer decision.  The Court will dismiss the retaliation claim against Defendant Braggs without prejudice.

D.   Hudson County COVID-19 Claims

Plaintiff challenges his conditions of confinement based on Hudson County's allegedly deficient response to COVID-19. "[T]he HCDOC facility recently had a number of COVID-19 related deaths of both officers and staff in December 2021.  Then an outbreak of the disease (COVID-19) followed in January 2022." ECF No. 1-2 at 45.  "[P]laintiff is also aware that Hudson County has the second largest populated city (Jersey City) in the state and is right across the Hudson River from New York

11

City which was the epic center [sic] for the introduction of the disease (COVID-19) into America." Id. "There is absolutely no access to hand sanitizer, no effective chemicals provided, and no proper cleaning materials." Id. at 51. "[M]op-heads are handed out to the unit maybe twice a week, the prisoner assigned to clean the dorm's tables perform such with a spray bottle that does not spray . . . ." Id.

Accepting the alleged facts as true and construing the complaint liberally, the Court will permit Plaintiff's conditions of confinement claims to proceed against Defendants Hudson County Freeholders, Ronald Edwards, Oscar Aviles, and Well Path.

E.   Retaliation at Hudson County Jail

Plaintiff alleges that HCJ social worker Juan Zapata confiscated his legal documents after Plaintiff requested copies of civil complaints against HCJ. ECF No. 1-3. "Instead of Mr. Zapata just obtaining the copies requested, he turned over the legal documents to Lt. Najead who confiscated the legal documents/civil complaints for a period of time with 'ill wishes' in 'Bad Faith.'" Id. Lt. Najead returned the documents to Zapata after three days, and Zapata returned the documents to Plaintiff. Id. "The legal documents were in 'disarray' mixed all together, when they were provided separately with various documents missing from the supporting evidential factors

provided in support . . . ." <u>Id.</u> at 1-2.  Zapata allegedly "advised detainees to not be surprised if the unit gets 'SHAKED DOWN' and our legal documents are taken." <u>Id.</u> at 3.

Assuming that requesting copies of prior complaints filed against the facility is a protected activity, Plaintiff has not pled sufficient facts to plausibly claim that he suffered an adverse action that is "sufficient to deter a person of ordinary firmness from exercising his constitutional rights." <u>Mack v. Warden Loretto FCI</u>, 839 F.3d 286, 297 (3d Cir. 2016) (internal quotation marks omitted).  This claim will be dismissed without prejudice.

F.    <u>Appointment of Counsel</u>

Plaintiff requests the appointment of counsel in a cover letter.  ECF No. 1-4.  Section 1915 permits a court to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1).  The Court considers the factors set forth in <u>Tabron v. Grace</u>, 6 F.3d 147 (3d Cir. 1993) in making this determination.  Plaintiff only lists the <u>Tabron</u> factors in his request for counsel and does not articulate how they apply to his case.  The Court will deny the request for counsel without prejudice; Plaintiff may resubmit a request by fully addressing the <u>Tabron</u> factors.

IV.  CONCLUSION

For the reasons stated above, the Court will permit Plaintiff's denial of medical care and conditions of confinement claims relating to Hudson County's COVID-19 response to proceed. All other claims and defendants will be dismissed without prejudice.  The Court will also deny the request for counsel without prejudice.

An appropriate order follows.


Dated: March 2, 2023                  s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.